UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

HARRIS CORPORATION,
a Delaware corporation,

      Plaintiff,

vs.

Case No.:

6:14-CV-549 - ORL 36GJK

MICHAEL PRIOLO,

      Defendant.

_____/

## COMPLAINT FOR PRELIMINARY INJUNCTIVE RELIEF AND OTHER DAMAGES

Plaintiff Harris Corporation ("Harris") sues Defendant Michael Priolo ("Priolo") and states as follows:

### JURISDICTION AND VENUE

1.     This is an action for temporary and permanent prohibitive injunction and damages related to certain confidentiality and employee non-solicitation restrictions contained in Priolo's 2012 Employee Agreement with Harris (the "Employee Agreement"), certain employee non-solicitation, non-interference with customers and potential customers of Harris, non-competition and confidentiality restrictions contained in the Harris Corporation 2005 Equity Incentive Plan Restricted Stock Unit Award Agreement (the "Incentive Agreement"), and violation of Florida's Uniform Trade Secrets Act.

2.     Immediate injunctive relief is sought pursuant to Federal Rule of Civil Procedure 65(a).

3.    This Court has jurisdiction pursuant to 28 U.S.C. §1332(a), as the parties are citizens of different states and the damages sought are greater than $75,000.

4.    This Court has personal jurisdiction over Priolo because he engaged in tortious and wrongful conduct in Florida, including violations of Florida's Uniform Trade Secrets Act, resulting in harm to Harris in Florida and should therefore reasonably anticipate being required to defend this action in Florida. Priolo regularly maintains contacts in Florida and engages in substantial and not isolated activity in this state including submitting and receiving expense reimbursements to Harris in Florida.

5.    This Court also has personal jurisdiction over Priolo because Priolo, from Florida, directly or indirectly, on his behalf or on behalf of another person or entity, did attempt to hire or employ any Harris employee, or otherwise solicit, request, entice, induce a Harris employee to terminate their employment with Harris, for the purpose of engaging in business activities that are competitive with Harris' business activities in breach of the Employee Agreement and the Incentive Agreement.

6.    Moreover, Priolo agreed to personal jurisdiction in Florida and venue in the state or federal courts of Brevard County, Florida to resolve disputes arising from either the Employee Agreement or the Incentive Agreement on which this action is predicated, and could therefore reasonably anticipate being required to defend this action in Florida.

7.    Under Local Rule 1.02(3)(b), the Orlando Division consist of Brevard County and therefore the place of holding court shall be Orlando.

## PARTIES

8.     Harris is a Delaware corporation qualified to do business in Florida, with its principle place of business in Brevard County, Florida.

9.     Priolo is an individual who, on information and belief, is domiciled in California.

## GENERAL ALLEGATIONS

10.     Harris is an international communications and information technology company serving governmental and commercial markets in industries such as communications, defense, public safety, transportation, energy, and healthcare, among others.

11.     Harris has a Public Safety & Professional Communications radio business unit ("Harris PS & PC") that, among other things, provides Land Mobile Radio ("LMR") systems throughout the United States.  Priolo was the Senior Major Accounts Manager for the western sales region of Harris PS & PC.

12.     In 2009, Priolo became employed by Harris.  As a condition of employment and continued employment with Harris, Priolo accepted and agreed to abide by the Harris Employee Agreement. A copy of Priolo's most recent Employee Agreement is attached hereto as **Exhibit 1,** and a copy of Priolo's electronic acceptance of this Employee Agreement is attached hereto as **Exhibit 2**.

13.     Harris utilizes electronic acceptance of Employee Agreements in lieu of having every employee sign a hardcopy.

14.     The Employee Agreement provides terms and conditions that govern the parties' relationship with respect to issues such as confidentiality, injunctive relief, non-solicitation of Harris employees, and the location of judicial venue to resolve disputes. *See e.g.* Employee Agreement ¶¶ 5, 10, 16 and 17.

15.     With respect to Priolo's obligations regarding Confidentiality, the Employee Agreement, ¶5 provides, in relevant part, as follows:

**Confidential Information Acquired During My Employment with Harris**
During and after my employment with Harris, I will maintain in strictest confidence and not disclose to any person or entity any Harris Confidential Information except with the prior permission of Harris Also, I will not use any Harris Confidential Information for the benefit of anyone other than Harris....

Harris Confidential Information is further defined in the Employee Agreement as:

[A]ny confidential, proprietary or trade secret information, whether or not marked or otherwise designated as confidential, whether in document, electronic or other form, and includes, without limitation, information that is not publicly known regarding finances, business and marketing plans, proposals, projections, forecasts, existing and prospective customers, vendor identities, employees and compensation, drawings, manuals, inventions, patent applications, process and fabrication information, research plans and results, computer programs, databases, software flow charts, specifications, technical data, scientific and technical information, test results, market studies, and know-how related to any of the above.

16.     With respect to Priolo's obligations regarding the solicitation of Harris employees, the Employee Agreement, ¶10 provides, in relevant part, as follows:

**Non-Solicitation**
I agree, both during my employment with Harris and for a period of twelve (12) months thereafter (the "Restricted Period"), I will not, directly or indirectly, on my behalf or on behalf of another person or entity, hire, employ, or attempt to hire or employ any Harris Employee, or otherwise solicit, request, entice, induce any Harris Employee to terminate his/her or her employment with Harris, for the purpose of engaging in business activities that are competitive with Harris' business activities. For purposes of this paragraph, "Harris Employee" means an employee of Harris with whom I have had personal contact at any time during the one (1) year period immediately preceding the termination of my employment with Harris.

4

17.    As a condition of receiving a grant of stock from Harris, Priolo also accepted and agreed to the Incentive Agreement. A copy of the Incentive Agreement is attached hereto as **Exhibit 3**, and a copy of Priolo's acceptance of the Incentive Agreement is attached hereto as **Exhibit 4.**

18.    Harris also utilizes electronic acceptance of Incentive Agreements in lieu of having every employee sign a hardcopy.

19.    The Incentive Agreement provides terms and conditions that govern the parties' relationship with respect to that agreement and, like the Employee Agreement, also includes restrictive covenants pertaining to, among other things, non-solicitation of Harris employees, non-interference with customers and potential customers of Harris, non-competition, confidentiality and injunctive relief. *See e.g.* Incentive Agreement ¶¶ 5 (and subsections therein), and 6(b).

20.    With respect to Priolo's obligations regarding non-solicitation, ¶5(a) of the Incentive Agreement provides:

Non-Solicitation

During the Protective Covenant Period (defined as the period of Employee's employment with Harris and for the twelve month period following the Employee's termination of employment), the Employee shall not, directly or indirectly, individually or on behalf of any other employer or any other business, person or entity: (i) recruit, induce, Solicit or attempt to recruit, induce or Solicit any Individual Employed by the Corporation to terminate, abandon or otherwise leave or discontinue employment with the Corporation; or (ii) hire or cause or assist any Individual Employed by the Corporation to become employed by or provide services to any other business, person or entity whether as an employee, consultant, contractor or otherwise.

21.     With respect to Priolo's obligations regarding non-interference with customers

or potential customers of Harris, ¶5(b) of the Incentive Agreement provides:

Customer and Potential Customer Non-interference

During the Protective Covenant Period, the Employee shall not, directly or indirectly,
individually or (i) on behalf of any other employer or any other business, person or
entity, entice, induce, Solicit or attempt or participate in enticing, inducing or
Soliciting, any Customer or Potential Customer of the Corporation to cease or reduce
or refrain from doing business with the Corporation; or (ii) on behalf of any
Competitive Business, entice, induce, Solicit or attempt or participate in enticing,
inducing or Soliciting, or accept or attempt or participate in accepting, business from
any Customer or Potential Customer…..

22.     With respect to Priolo's obligations regarding non-competition, ¶5(c) of the

Incentive Agreement provides:

Non-Competition

During the Protective Covenant Period, the Employee shall not, directly or indirectly,
as an employee, independent contractor, consultant, officer, director, principal, lender
or investor engage or otherwise participate in any activities with, or provide services
to, a Competitive Business, without the prior written consent of the Senior Vice
President, Human Resources or other designated executive officer of the Corporation
(which consent shall be at such officer's discretion to give or withhold). Nothing in
this Section 5(c) shall preclude the Employee from owning up to 1% of the equity in
any publicly traded company.

23.     With respect to Priolo's obligations regarding confidentiality, ¶5(e) of the

Incentive Agreement provides:

Confidentiality

During the Employee's employment with the Corporation and thereafter, the
Employee shall not use or disclose, except on behalf of the Corporation and pursuant
to and in compliance with its direction and policies, any Confidential Information of
(i) the Corporation or (ii) any third party received by the Corporation which the
Corporation is obligated to keep confidential. This Section 5(e) will apply in addition
to, and not in derogation of, any other confidentiality or non-disclosure agreement
that may exist, now or in the future, between the Employee and the Corporation.

24.     Confidential Information is further defined in ¶5(g)(2) of the Incentive Agreement as confidential, proprietary or trade secret information, whether or not marked or otherwise designated as confidential, whether in document, electronic or other form, and includes, but is not limited to, information that is not publicly known regarding finances, business and marketing plans, proposals, projections, forecasts, existing and prospective customers, vendor identities, employees and compensation, drawings, manuals, inventions, patent applications, process and fabrication information, research plans and results, computer programs, databases, software flow charts, specifications, technical data, scientific and technical information, test results and market studies.

25.     The relevant terms and conditions contained in the Employee and Incentive Agreements are reasonable in time, area, and line of business and serve a legitimate business interest.

26.     Priolo received and accepted the Award under the Incentive Agreement. *See* Exhibit 4.

27.     Harris has a legitimate business interest in having, requiring, and enforcing its confidentiality, noninterference with customers and potential customers, non-competition, and nonsolicitation clauses because:

    a.     Harris invests a considerable amount of time and money in training its PS & PC employees in pursing and providing services to customers of LMR systems throughout the United States, which training includes specialized technical information on Harris' LMR systems;

b.     Harris' employees have unique knowledge of protectable trade secrets that Harris wants to preserve;

c.     Harris' former employees have knowledge of Harris employees' knowledge and thus are in a unique position to solicit Harris' customers or employees, utilize Harris' confidential information against Harris, and compete with Harris.

28.     During his employment, Priolo was the Senior Major Accounts Manager for the western sales region of Harris' PS & PC.

29.     Priolo worked with Harris out of Fresno, California and handled the sales of LMR radios and systems business for the western portion of United States, which included Hawaii, Alaska, Oregon, California, Idaho, Nevada, Arizona, Utah, Colorado, New Mexico, Oklahoma, Texas, and Arkansas.

30.     While at Harris, Priolo was privy to significant amounts of Harris' Confidential Information as defined in the Employee and the Incentive Agreements including detailed radio and systems sales and projections for Harris' LRM systems business.

31.     While at Harris, for example, Priolo was intimately involved with Harris' LMR systems business and its confidential business strategies for the United States with particular focus on the western region in which Priolo operated.

32.     In particular, among other Harris Confidential Information, Priolo had access to Harris' entire pipeline of business opportunities for its LMR systems sales for the western region, as well as the rest of the United States, including Florida. This pipeline represents a

subset of potential customers that, after extensive evaluation by Harris personnel, including Priolo, were determined to offer the maximum chance of closing a sale.

33.     Harris has dedicated the vast majority of its business development resources to converting those identified high priority business opportunities into sales.

34.     Further, in his position, Priolo had access to and was involved extensively in the development of Harris' long-term LMR systems business strategy for the United States for fiscal years 2014, 2015 and 2016, which included, among other things, securing and growing sales of LMR systems for the western region.

35.     As part of this strategic development planning, Priolo was responsible for developing Harris' sales strategy for the western region.

36.     Priolo also has specific knowledge of Harris' pricing strategy for its LMR systems across the United States, including Florida.

37.     This strategy includes, but is not limited to, how low Harris will go on its pricing, Harris' costs associated with these products and Harris' profit margins.

38.     Priolo was also involved extensively in the pricing review for all LMR systems deals in the western region.

39.     Priolo also sat on and actively participated in the advisory group that was instrumental in laying out Harris' product development pipeline for its LMR systems for the United States for fiscal years 2014, 2015 and 2016. This product development pipeline includes not only planned new products but also planned upgrades to Harris' existing product line, all of which was known by Priolo.

40.     As a result, Priolo has detailed knowledge of critical Harris Confidential Information regarding its LMR systems, and Harris' long-term business and product development strategy for those products in the United States, including Florida.

41.     This information would be extremely valuable to a competitor and, if in the hands of a competitor or used on behalf of a competitor, would severely disadvantage and cause irreparable harm to Harris.

42.     Harris has taken extensive steps to protect its confidential information from disclosure to competitors, other third parties, and Harris employees who have no reason to know this information.

43.     Harris also has devoted substantial time, money and effort to build its reputational goodwill generally and the loyalty of its customer base in particular.

44.     All conditions precedents to filing this lawsuit have been met, performed, or waived.

45.     Harris has retained the services of Holland & Knight LLP and has agreed to pay the firm its reasonable attorneys' fees and costs incurred in connection with this action.

## COUNT ONE
## TEMPORARY AND PERMANENT INJUNCTIVE RELIEF

46.     Harris restates and incorporates by reference the allegations of Paragraphs 1-44 above.

47.     Harris has legitimate business interest in prohibiting Priolo from directly or indirectly, soliciting, attempting to solicit, inducing, or attempting to induce customers or potential customers of Harris to cease or reduce doing business with Harris in violation of the Incentive Agreement.

48.     Harris has legitimate business interest in prohibiting Priolo from directly or indirectly, as an employee, independent contractor, consultant, officer, director, principal, lender or investor engaging or otherwise participating in any activities with, or providing services to, a business in competition with Harris, without the prior written consent of the Senior Vice President, Human Resources or other designated executive officer of Harris.

49.     Harris has a legitimate business interest in prohibiting Priolo, directly or indirectly, individually or on behalf of any other employer or any other business, person or entity, from recruiting, inducing, soliciting or attempting to recruit, induce or solicit any Harris employee to terminate, abandon or otherwise leave or discontinue employment with Harris in violation of Priolo's Employee Agreement and Incentive Agreement.

50.     Harris has legitimate business interest in prohibiting Priolo from disclosing any Harris Confidential Information to any third party.

51.     Priolo resigned his employment with Harris on February 10, 2014.

52.     Prior to his resignation and in derogation of his obligations under the Employee Agreement and Incentive Agreement, Priolo committed the following acts:

a.      Priolo accepted a position with EF Johnson Technologies, Inc. ("EF Johnson"), a direct competitor to Harris' PS & PC business throughout the United States, including Florida, on February 7, 2014 performing essentially the same sales functions he did while at Harris. Priolo's assigned territory at EF Johnson substantially overlaps his assigned region of responsibility while employed by Harris in violation of his non-competition obligations.

b.      Less than one month after leaving Harris for a direct competitor, Priolo was observed meeting with representatives of the Idaho State Police for the express purpose of soliciting that agency to purchase EF Johnson Technologies' radios, which directly compete with Harris' PS & PC LMR systems. While employed by Harris, Priolo not only personally dealt with the Idaho State Police, but he was the primary individual involved in sustaining and further developing Harris' relationship with that customer. This is a direct violation of Priolo's non-competition obligations and his obligations not to interfere with Harris' customer relationships as set forth in his Incentive Agreement.

c.      Priolo transmitted Harris Confidential Information from Harris' secured computer network to his personal "Gmail" account the day before he announced his resignation at Harris.  Forensic analysis of Harris' computer network, including Priolo's work email and other work computer activity, revealed that the information consists of detailed radio and systems sales and projections for Harris' entire LRM systems business in the United States, and reveals in detail where Harris believes it has the strongest and weakest sales opportunities across the United States. Priolo has not returned those records and all copies thereof to Harris. Accordingly, Priolo has violated his confidentiality, nondisclosure and return of Harris property obligations under his Employee Agreement and/or Incentive Agreement.

d.      On information and belief, Priolo is using Harris Confidential Information in an effort to undercut Harris on potential sales to new and existing

customers throughout the United States, including Florida, which is a violation of his obligations of confidentiality under both the Employee and Incentive Agreements.

     e.     Priolo has directly or indirectly, from Florida, solicited current Harris employees for the purpose of inducing those employees to terminate their employment with Harris and accept employment with EF Johnson. *See* **Exhibit 5** (email from Rob Peskind from White Tiger Search in Florida to Harris employee E. Fulton inferring that Priolo recommend that Peskind recruit Fulton to leave Harris and work for EF Johnson).

53.     Priolo's conduct has and will continue to cause irreparable harm, for which Harris has no adequate remedy at law.

54.     The Employee Agreement between Harris and Priolo, by its terms, survives Priolo's resignation of employment. Specifically, the non-disclosure of Harris Confidential Information, and non-solicitation of Harris' employees continue to be binding contractual obligations.

55.     The restrictive covenants contained in the Incentive Agreement between Harris and Priolo, by its terms, survives Priolo's resignation of employment as well. Specifically, the non-solicitation of Harris employees, the non-interference with Harris' customers and potential customers, the non-competition agreement, and the confidentiality of Harris Confidential Information continues to be a binding contractual obligation for Priolo.

56.     Given Priolo's violation of the Employee Agreement and Incentive Agreement, Harris has a substantial likelihood of success on the merits against Priolo.

57.     Granting temporary and permanent injunctive relief will not harm the public interest.

58.     Further, the harm for which Harris seeks relief outweighs any possible harm to Priolo.

**WHEREFORE**, Harris demands judgment against Priolo as follows:

(a)     Issuing a temporary and permanent injunction prohibiting Priolo for a period of twelve (12) months, from the date of such Judgment or Order from directly or indirectly, individually or (i) on behalf of any other employer or any other business, person or entity, from enticing, inducing, Soliciting or attempting or participating in enticing, inducing or Soliciting, any Customer or Potential Customer of the Corporation to cease, reduce or refrain from doing business with the Corporation; (ii) on behalf of any Competitive Business, entice, induce, Solicit or attempt or participate in enticing, inducing or Soliciting, or accept or attempt to participate in accepting, business from any Customer or Potential Customer as those terms are defined in the Incentive Agreement.

(b)     Issue a temporary and permanent injunction mandating that Priolo abide by the terms and conditions of his noncompetition obligations as set forth in the Incentive Agreement, and issuing a temporary and permanent injunction prohibiting Priolo from continuing his employment with EF Johnson, a direct competitor with Harris, in any capacity that would put him in competition with Harris until the expiration of the twelve (12) month restrictive covenant period, the date of which shall be determined by this Court;

(c)     Issue a temporary and permanent injunction for a period of twelve (12) months, from the date of such Judgment or Order, prohibiting Priolo from directly or

indirectly, individually or on behalf of any other employer, business, person or entity from: (i) recruiting, inducing, Soliciting or attempting to recruit, induce or Solicit any Individual Employed by the Corporation to terminate, abandon or otherwise leave or discontinue employment with the Corporation; or (ii) hiring or causing or assisting any Individual Employed by the Corporation to become employed by, or provide services to, any other business, person or entity whether as an employee, consultant, contractor or otherwise, as those terms are defined in the Incentive Agreement;

(d)     Issuing a temporary and permanent injunction prohibiting Priolo from disclosing any Harris Confidential Information, as defined in the Employee Agreement and Incentive Agreement, to any third party(ies) or using such confidential information for the benefit of anyone other than Harris.

(e)     Award Harris its reasonable attorneys' fees and costs incurred in connection with this action pursuant to Florida Statutes § 542.335(1)(k);

(f)     Awarding all such other relief as the Court deems just and proper.

COUNT TWO
**VIOLATION OF FLORIDA'S UNIFORM TRADE SECRETS ACT**

59.     Harris restates and incorporates by reference the allegations of Paragraphs 1-44 and 51(a) above.

60.     This is an action brought pursuant to Florida's Uniform Trade Secrets Act ("FUTSA"), Chapter 688, Florida Statutes.

61.     Harris maintains a secured computer network not available to the public.

62.     Harris maintains its Harris Confidential Information on its network servers located in Florida.

15

63.    The Harris Confidential Information is considered trade secrets as defined by FUTSA.

64.    On or before February 9, 2014, Priolo removed Harris Confidential Information from Harris' secured network servers in Florida.

65.    On February 9, 2014, at 13:36:19 EST, Priolo transmitted Harris Confidential Information from Harris' secured network to his personal "Gmail" account the day before he announced his resignation.

66.    Forensic analysis of Harris' computer network, including Priolo's work email and other work computer activity, revealed that the information consists of detailed radio and systems sales and projections for Harris' entire LRM systems business in the United States, and reveals in detail where Harris believes it has the strongest and weakest sales opportunities across the United States.

67.    The Harris Confidential Information Priolo took, provided detailed radio and systems sales and projections for Harris' LRM systems business in Florida.

68.    Priolo did not and has not returned those records and all copies thereof to Harris in Florida as he was required to do.

69.    On information and belief, Priolo has violated his confidentiality, nondisclosure and return of Harris property obligations under his Employee Agreement and/or Incentive Agreement.

70.    Priolo has misappropriated Harris' trade secrets as defined by FUTSA and has used these trade secrets to the detriment of Harris throughout the United States, including Florida.

71.     The Harris' trade secrets misappropriated by Priolo were not generally known or readily available to third parties.

72.     Harris took sufficient steps to protect the trade secrets that Priolo misappropriated.

73.     The misappropriation of such trade secrets has and will continue to cause damage to Harris in Florida and throughout the United States.

74.     Such misappropriation and/or use of Harris' trade secrets by Priolo was willful and malicious entitling Harris to exemplary damages.

**WHEREFORE**, Harris demands judgment against Priolo for damages resulting from the misappropriation of trade secrets including, but not limited to, compensatory damages, exemplary damages, lost profits, interest, costs, attorneys' fees, and all other relief deemed proper by this Court.

**DATED** this 4th day of April, 2014.

/s/Stephen T. Ball
STEPHEN T. BALL
Florida Bar No. 716121
stephen.ball@hklaw.com
Luis J. Gonzalez
Florida Bar. No. 055881
luis.gonzalez@hklaw.com
HOLLAND & KNIGHT LLP
200 S. Orange Avenue, Ste 2600
Orlando, FL 32802-1526
(407) 425-8500
Attorneys for Plaintiff